IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| CHANDLE DEAN SELVEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. CIV-14-1173-D |
| | ) | |
| STRIDER ESTEP, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## REPORT AND RECOMMENDATION

Plaintiff, appearing *in forma pauperis*, brings this action under 42 U.S.C. § 1983, alleging violations of his constitutional rights. United States District Judge Timothy J. DeGiusti referred this matter to the undersigned magistrate judge for preliminary review, for conducting any necessary hearings, including evidentiary hearings, for the entry of appropriate orders as to non-dispositive matters, and for the preparation and submission of proposed findings and recommendations as to dispositive matters referenced in 28 U.S.C. §636(b)(1)(B) and (C). For the following reasons, it is recommended that this action be summarily **DISMISSED**.

**I. BACKGROUND**

At the time Plaintiff filed this action, he was confined in the Washita County Jail in Cordell, Oklahoma. (ECF No. 1:1). He named four Defendants: Strider Estep, identified as "investigator Washita Co. Sheriffs"; Christopher S. Kelly, identified as Associate Judge; Kelby Peoples, whom Plaintiff identified as "Affient/Washita Co"; and John Micah Sielert, apparently Plaintiff's appointed counsel. (ECF No. 1:1-3).

In his four-count Complaint, Plaintiff first alleged an illegal search of his motel room by Defendant Estep; Plaintiff stated that on June 13, 2014, Estep kicked in the

door, but did not have a no-knock search warrant. (ECF No. 1:1, 2, 4). In his statement of the nature of the case, Plaintiff alleged that a criminal case was filed on June 18, 2014, as a result of the search. Case No. CF-2014-95, District Court of Washita County. (ECF No. 1:2).

The publically available docket sheet for the criminal case shows that Plaintiff was indeed charged with five felonies and one misdemeanor: distributing CDS within 2000 feet of park/school/minor; child neglect; possession of CDS (three counts); and misdemeanor possession of drug paraphernalia. ODCR, CF-2014-95, District Court of Washita County. Plaintiff waived his preliminary hearing on December 30, 2014, and was arraigned and bound over on January 9, 2015. *Id.* On January 16, 2015, he entered a guilty plea and was sentenced. *Id.* On January 30, 2015, he was transferred to Lexington Correctional Center where he is currently serving his sentences. *Id.*; Department of Corrections, Offender Records.

In Count II, Plaintiff claimed that Defendant Kelly, a state district judge presiding over the criminal action against Plaintiff, imposed an excessive bond, signed illegal warrants, and appointed counsel he knew would have a conflict because counsel represented Plaintiff's co-defendant. (ECF No. 1:2, 4). The undersigned magistrate judge notes that the state docket sheet in Plaintiff's criminal case does not reflect that he had a co-defendant, and, in any event, on October 30, 2014, Defendant Sielert was replaced as appointed counsel by Ryan Recker. ODCR, CF-2014-95, District Court of Washita County.

In Count III, Plaintiff alleged Defendant Peoples conducted an illegal, second search of the motel room and obtained evidence. (ECF No. 1:3, 5). Although Plaintiff identified Defendant Peoples only as "affient," consideration of the allegations and their context leads to an inference that Peoples is associated with the Washita County Sheriff's office.

Finally, in Count IV, Plaintiff alleged that his appointed public defender, Defendant Sielert, obtained information and paperwork and then shared it with Plaintiff's alleged co-defendant. (ECF No. 1:8). Plaintiff contends this constituted an ethical violation, a conflict of interest, and negligence. *Id.*

## II. SCREENING

The Court is required to evaluate the sufficiency of any complaint brought by a prisoner (1) with respect to prison conditions; (2) seeking redress against a governmental entity, officer, or employee; or (3) who is proceeding *in forma pauperis. See* 42 U.S.C. § 1997e(c)(1); 28 U.S.C. §§ 1915A(a), 1915(e)(2)(B). Specifically, the Court is required to dismiss a complaint or any portion of a complaint that is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *See* 42 U.S.C. § 1997e(c)(l); 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b). The standard of review for such screening is the same as that applied when considering a motion to dismiss for failure to state a claim. *Kay v. Bemis,* 500 F.3d 1214, 1217 (10th Cir. 2007).

3

**III. DISCUSSION**

**A. Plaintiff's Counts I & III**

Although Plaintiff has brought this action pursuant to 42 U.S.C. § 1983, it is clear that he is attempting to use a § 1983 action to bring a collateral attack on his criminal conviction. As such, *Heck v. Humphrey*, 512 U.S. 477 (1994) and its progeny require dismissal of Plaintiff's claims. In *Heck*, the Supreme Court reiterated that "habeas corpus is the exclusive remedy for a state prisoner who challenges the fact or duration of his confinement and seeks immediate or speedier release, even though such a claim may come within the literal terms of § 1983." *Id.* at 481. As the Court explained:

> We hold that, in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983. Thus, when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated. But if the district court determines that the plaintiff's action, even if successful, will not demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed, in the absence of some other bar to the suit.

*Id.* at 486-87. The Court extended *Heck* to claims for declaratory relief in *Edwards v. Balisok*, 520 U.S. 641, 648 (1997). *See also Wilkinson v. Dotson*, 544 U.S. 74, 81–82 (2005) ("[A] state prisoner's § 1983 action is barred (absent prior invalidation)—no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings)—if success in that action would necessarily demonstrate the invalidity of confinement or its duration.").

Counts I and III, detailed above, necessarily imply the invalidity of Plaintiff's conviction and confinement. Accordingly, his claims are not cognizable in this § 1983 action. Thus, it is recommended that the claims be dismissed without prejudice. *See Fottler v. United States*, 73 F.3d 1064, 1065-66 (10th Cir. 1996) ("When a § 1983 claim is dismissed under *Heck*, the dismissal should be without prejudice. …. If [the plaintiff] is later successful in overturning his conviction, he should be allowed to bring his § 1983 action at that time.").

Further, although this Court could liberally construe Plaintiff's action as a habeas corpus action, it is not recommended that the present action be recharacterized as such. Before a federal court may grant habeas relief to a state prisoner-petitioner, the prisoner must either exhaust his or her remedies in state court or demonstrate the (1) absence of available state corrective process, or (2) the existence of circumstances rendering the state process ineffective to protect the petitioner's rights. 28 U.S.C. § 2254(b)(1); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999) ("[T]he state prisoner

5

must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition."). "The exhaustion requirement is satisfied if the issues have been properly presented to the highest state court, either by direct review of the conviction or in a postconviction attack." *Brown v. Shanks*, 185 F.3d 1122, 1124 (10th Cir. 1999) (internal quotation marks omitted). Public records indicate that thus far, Plaintiff has not pursued or attempted to pursue any state-level avenues to relief. Plaintiff was after all only recently convicted. Thus, it is clear that each of Plaintiff's potential habeas corpus claims are unexhausted. Accordingly, the undersigned recommends that rather than construing Plaintiff's Complaint as a habeas action, the Court should dismiss Counts I and III without prejudice.

**B. Defendant Kelly**

In Count II, Plaintiff asserted claims against Defendant Kelly, the judge presiding over Plaintiff's criminal case, based on allegations of excessive bond, illegal warrants and appointing counsel Defendant Kelly knew would have an alleged conflict of interest. A state judge is absolutely immune from § 1983 liability except when the judge acts "in the clear absence of all jurisdiction." *Stump v. Sparkman,* 435 U.S. 349, 356–57 (1978) (articulating broad immunity rule that a "judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority...."); *Hunt v. Bennett,* 17 F.3d 1263, 1266 (10th Cir. 1994). The determination as to whether a judge performed a "judicial" act or acted "in the clear absence of jurisdiction" is made by looking to "the nature of the act itself, i.e., whether it is a

function normally performed by a judge, and to the expectations of the parties, i.e., whether they dealt with the judge in his judicial capacity." *Stump,* 435 U.S. at 362.

Plaintiff's claims against Defendant Kelly must be dismissed under the doctrine of absolute judicial immunity:

> [O]ur cases make clear that [judicial] immunity is overcome in only two sets of circumstances. First, a judge is not immune from liability for nonjudicial actions, i.e., actions not taken in the judge's judicial capacity.... Second, a judge is not immune for actions, though judicial in nature, taken in the complete absence of all jurisdiction.

*Mireles v. Waco*, 502 U.S. 9, 11–12 (1991) (citations omitted). Plaintiff's allegations do not support an inference that Defendant Kelly was acting outside his judicial capacity, nor do they support an inference that Defendant Kelly was acting "in complete absence of all jurisdiction." Therefore, claims against Defendant Kelly should be dismissed with prejudice based on the doctrine of absolute judicial immunity.

### C. Defendant Sielert

Finally, Defendant Sielert is identified in Plaintiff's Complaint as his attorney, although the public record indicates that he did not remain so. Regardless, "[t]o state a claim under [42 U.S.C.] § 1983 a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). Plaintiff's attorney was not acting "under color of state law" when he was representing Plaintiff. Even public defenders appointed by the court do not act "under color of state law" when representing defendants because they are not

acting on behalf of the state but are, rather, adversaries of the state. *Id.* at 50 (citing *Polk County v. Dodson*, 454 U.S. 312, 325 (1981)).

> "[A] public defender differs from the typical government employee and state actor. While performing his duties, the public defender retains all of the essential attributes of a private attorney, including, most importantly, his 'professional independence,' which the State is constitutionally obliged to respect. A criminal lawyer's professional and ethical obligations require him to act in a role independent of and in opposition to the State."

*West*, 487 U.S. at 50 (internal quotations and citations omitted). Accordingly, Defendant Sielert is not a proper party to this civil rights action. Claims against Defendant Sielert based on alleged violation of Plaintiff's civil rights should be dismissed with prejudice for failure to state a claim upon which relief may be granted.

## IV. RECOMMENDATION

In light of the foregoing discussion, it is hereby recommended that this action be **DISMISSED** pursuant to 28 U.S.C. §1915. Plaintiff's Counts I and III should be dismissed without prejudice for failure to state a claim upon which relief can be granted. Plaintiff's Count II against Defendant Kelly and Count IV against Defendant Sielert should be dismissed with prejudice for failure to state a claim upon which relief can be granted.

Plaintiff is advised of his right to file specific written objections to this Report and Recommendation. 28 U.S.C. § 636; Fed. R. Civ. P. 72. Any such objections must be filed with Clerk of the District Court by **May 21, 2015.** Plaintiff is further advised that failure to make timely objection to this Report and Recommendation waives the right to

appellate review of the factual and legal issues addressed herein. *Casanova v. Ulibarri*, 595 F.3d 1120, 1123 (10th Cir. 2010).

This Report and Recommendation **DISPOSES OF ALL ISSUES** referred to the undersigned Magistrate Judge in this matter.

**ENTERED** on May 4, 2015.

*[signature]*

SHON T. ERWIN
UNITED STATES MAGISTRATE JUDGE